# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1681
_____

| | |
|---|---|
| Jacqueline Gray; Windhover, Inc., | * |
| | * |
| Plaintiffs-Appellants, | * |
| | * |
| v. | * |
| | * |
| City of Valley Park, Missouri, | * |
| | * |
| Defendant-Appellee. | * On Appeal from the United |
| _____ | * States District Court for the |
| | * Eastern District of Missouri. |
| Eagle Forum Education and Legal | * |
| Defense Fund; Allied Educational | * |
| Foundation; Brian Bilbray; Steve | * |
| King; Lamar Smith; Washington | * |
| Legal Foundation, | * |
| | * |
| Amici on behalf of Appellee. | * |

_____

Submitted: December 10, 2008
Filed:  June 5, 2009 (Corrected: 06/11/2009)
_____

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.
_____

BEAM, Circuit Judge.

Jacqueline Gray and Windhover, Inc. (Appellants, collectively) challenge ordinances enacted by the City of Valley Park, Missouri, (City) that address illegal

alien employment in the context of real estate occupation and leasing. Appellants initially filed suit in state court against the City to invalidate the ordinances. The City removed the case to federal court and the parties later filed cross motions for summary judgment. The district court[1] granted judgment in favor of the City, denied Appellants' motion and dismissed Appellants' Second Amended Complaint with prejudice. Because Appellants have standing and we agree with the district court regarding the absence of preclusion, we affirm.

I.    BACKGROUND

Gray is the sole owner of Windhover, Inc., a corporation that owns rental units in the City. Intermittently, Windhover hires individuals to work at miscellaneous tasks and perform maintenance on this property. In September 2006, Gray and others sued the City in state court seeking to enjoin the enforcement of an ordinance (ordinance 1708, later repealed and amended by ordinance 1715), which concerned the same general subject matter as the two ordinances challenged in this action. See Reynolds v. City of Valley Park, No. 4:06CV01487, 2006 WL 3331082 (E.D. Mo. 2006) ("the Reynolds case"). The City removed the Reynolds case, but the district court remanded, in part because it held there was no case or controversy under the Federal Declaratory Judgment Act. Id. at *6. In February 2007, the City effectively repealed both of the ordinances at issue in the Reynolds case and replaced them with ordinance 1721 (involving the harboring of illegal aliens in rental units) and ordinance 1722 (involving the employment of unauthorized aliens). The Reynolds case nonetheless proceeded in state court and on March 12, 2007–even after the City repealed the two ordinances upon which the pending action was based, and the plaintiffs declined the opportunity to amend the action to include ordinances 1721 and 1722–the state court permanently enjoined the enforcement of the two, then-repealed

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

ordinances. The City appealed that order and the Missouri Court of Appeals dismissed the case as moot because the enforcement provisions of the ordinances had been repealed and substituted with new executory provisions–ordinances 1721 and 1722 (at issue in the instant appeal). Reynolds v. City of Valley Park, 254 S.W.3d 264, 266 (Mo. Ct. App. 2008).

On March 14, 2007, Appellants initiated the instant action in state court, challenging ordinances 1721 and 1722. Ordinance 1722, however, is the only ordinance now at issue because the City repealed ordinance 1721 in July 2007, and the parties stipulated to a voluntary dismissal of Appellants' related claims. The City removed the case to federal district court. The district court retained the action, holding that the new ordinance imposed immediate obligations on Appellants.

Generally, ordinance 1722 prohibits all business entities in Valley Park from knowingly employing unauthorized aliens.[2] The ordinance sets out a procedure for lodging complaints against potential violators and requires, among other things, that those business entities that apply for a business license sign an affidavit stating that they do not knowingly employ any person who is an unlawful worker.

Both parties filed motions for summary judgment with the district court. As a result of these motions, the district court addressed issues of preclusion (based upon the effect, if any, of the state court's March 12, 2007, injunction concerning ordinances 1708 and 1715); preemption, or not, by federal immigration law; Appellants' standing to assert an equal protection claim; the status of Appellants' due process claim; and whether ordinance 1722 violates Missouri law. The district court ruled in the City's favor, determining that (1) there was no issue preclusion arising

---

[2]In August 2007, the City enacted ordinance 1736, which amended the effective date of ordinance 1722 but otherwise reenacted 1722 intact. Thus, for the sake of clarity, throughout this opinion we refer to ordinance 1722 as the ordinance at issue.

from the state court's earlier decision regarding ordinances 1708 and 1715 because ordinance 1722 was not identical; (2) federal law did not preempt ordinance 1722; (3) Appellants lacked standing to pursue an equal protection claim; (4) ordinance 1722 does not violate the Due Process Clause; and (5) ordinance 1722 does not violate Missouri law by exceeding the authority granted a fourth class city.

Only two issues are before us today: (1) whether the district court lacked jurisdiction over this matter and (2) whether this matter is precluded by the prior Missouri state court order.

**II.     DISCUSSION**

In an unlikely turn of events, Appellants now claim that ordinance 1722 is not enforceable against them at all (and was never enforceable) and as a result, the district court had no subject matter jurisdiction–making the court's failure to remand a jurisdictional defect. "'[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction.'" Young America Corp. v. Affiliated Computer Services (ACS), Inc., 424 F.3d 840, 843 (8th Cir. 2005) (quoting Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002)) (alteration in original). Appellants' current claim, contrary to nearly every pleading filed by Appellants since the inception of this case in state court, is that there is no actual or imminent injury-in-fact and thus no justiciable case or controversy sufficient to satisfy federal standing requirements. To be sure, this course of argument is unorthodox. It is with restraint that we do not point out the numerous instances, in court pleadings and affidavits made under oath, where Appellants claimed imminent harm, injury to property interests and other burdens of enforcement and compliance arising from ordinance 1722. To be fair, at one point Appellants did amend their argument in support of summary judgment and sought a declaration that the ordinance did not apply to Windhover or Gray. That argument, however, was not made in the context of a challenge to standing (although a ruling in Appellants' favor on that issue would have put the issue of standing in play), but was

crafted to judicially solidify the then-uncertain interpretation of ordinance 1722 as it applied to Appellants. But, that argument was merely a needle in the haystack of Appellants' allegations of imminent harm to themselves and third parties that dominated the proceedings below.[3]

### A.   Judicial Estoppel

The City argues that because Appellants' current stance regarding their lack of standing is wholly at odds with the position they took before the district court, Appellants should be judicially estopped from proceeding on this theory. The doctrine of judicial estoppel provides that when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quotation omitted) (holding that under the doctrine of judicial estoppel, New Hampshire was equitably

---

[3]The City argues that Appellants' current change of course is a keen, brazen, and strategic attempt by Appellants to covertly vacate the district court's decision on the merits without having to address the merits on appeal, and in an effort to return to state court with no preclusive federal opinion blocking their efforts. We caution that if any of this so-called tactical scheming pours the foundation for the unnecessary exertion of our judicial resources here, such abuse will not go unnoticed. This admonition applies equally to the City, which likewise appears to have contradicted itself on appeal in an attempt to gain an advantage. For example, we are dubious of the City's professed disdain regarding Appellants' alleged "desperate" effort to find some way of denying their own standing by "deceptively" inserting the word "expressly" into ordinance 1722 as a qualifier to those business entities exempted–i.e., "any business entity that is [expressly] exempt by law." The City itself, in its Reply Memorandum in Support of Defendant's Motion for Summary Judgment, stated that the "business entity" contemplated by ordinance 1722 "is limited in Section 3 of the ordinance to business entities that require a business license, unless *expressly* exempted by law." Those who live in glass houses should not throw stones.

barred from asserting, contrary to its position in prior litigation over the states' lobster fishing rights, that the inland Piscataqua River boundary ran along the Maine shore); In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999); Taylor v. Food World, Inc., 133 F.3d 1419, 1422 (11th Cir. 1998); Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996); In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990). This rule "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000). The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. New Hampshire, 532 U.S. at 749-50; Monterey Dev. Corp. v. Lawyer's Title Ins. Corp., 4 F.3d 605, 609 (8th Cir. 1993).

While the circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation, the Supreme Court has identified several factors that typically inform the decision whether to apply the doctrine in a particular case: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire, 532 U.S. at 750-51. There is no mechanical test, however, and ultimately, because the rule is intended to prevent improper use of judicial machinery, the discretionary determination to apply the doctrine of judicial estoppel is made on a case-by-case basis. Id. at 750 (stating that judicial estoppel is an equitable doctrine invoked by a court at its discretion).

The City's contention that we should apply judicial estoppel in this case is not without force. Indeed, it would seem at first blush that this is *just* the sort of case to which judicial estoppel must apply. However, we are sufficiently concerned about

applying judicial estoppel under the particular circumstances of this case that we decline to do so.[4] In the end, we must have Article III jurisdiction to entertain *any* claim even though the change in tactics in this case does seem to result in the sort of extreme perversion of the judicial process that normally justifies the use of judicial estoppel. Most critically, we have failed to find any precedent, and the City cites to no authority, supporting the application of this doctrine in the face of an alleged jurisdictional default.[5] Even if the parties wasted judicial resources up to this point

---

[4]Appellants claim that it was only after they received the City's stated interpretation of ordinance 1722 in the City's Reply Memorandum in Support of [the City's] Motion for Summary Judgment (discussing the ordinance in the context of whether it covers casual domestic workers for purposes of the federal preemption statute) that Appellants realized there was no threat of enforcement because they did not have, nor did they plan to obtain, a business license. Judicial estoppel might be inappropriate when a party's prior position was based on inadvertence or mistake. New Hampshire, 532 U.S. at 753 (rejecting New Hampshire's mistake argument that it had failed to do historic research earlier). To the extent we indulge Appellants' newly-minted "understanding" (or prior, inadvertent misunderstanding) of the ordinance in question, this too informs our determination not to apply judicial estoppel. That said, Appellants' argument gives us pause to consider why they did not amend their pleadings or otherwise pursue the instant argument before the district court when they discovered the problem prior to the court's judgment on the pending motions. Appellants assert that "it had by then [at the time the district court ruled on Appellants' motion for summary judgment] become *clear* that the [Appellants] are not required to have a business permit under Valley Park municipal law, had no intent of applying for a business permit, and thus would not be required to sign an affidavit of compliance." Appellants' Brief at 28 (emphasis added). If it was so clear that there was no means by which the City could enforce ordinance 1722 against them, why continue to pursue the claim?

[5]The Federal Circuit Court of Appeals addressed the issue in Biomedical Patent Management Corp. v. California Department of Health Services., 505 F.3d 1328, 1342 (Fed. Cir. 2007), cert. denied, 129 S. Ct. 895 (2009), but declined to apply the doctrine because there was an intervening change of law justifying the party's change of position regarding its immunity from suit.

and misled the courts on this issue in the process, we may not forge ahead on blind principle without jurisdiction to do so.

### B.     Jurisdiction

We recognize that "[a]ny party or the court may, at any time, raise the issue of subject matter jurisdiction." GMAC Commercial Finance LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 828 (8th Cir. 2004). And, even if neither party had raised the issue below, we are required to address it. Renne v. Geary, 501 U.S. 312 (1991) (discussing justiciability and ripeness for the first time before the Supreme Court); FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990).

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). "The limitations imposed by Article III are usually referred to as the 'case or controversy' requirement." Schanou v. Lancaster County Sch. Dist. No. 160, 62 F.3d 1040, 1042 (8th Cir. 1995) (quoting Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc)); see also Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982) ("Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'"). This court defines "case or controversy" to require "a definite and concrete controversy involving adverse legal interests at every stage in the litigation." McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1210 (8th Cir. 1992). "Federal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case. Courts employ a number of doctrines to determine justiciability such as standing, ripeness, and mootness." Schanou, 62 F.3d at 1042.

Article III standing represents "perhaps the most important" of all jurisdictional requirements. FW/PBS, 493 U.S. at 231. This doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (2009) (internal quotations and emphasis omitted). In the normal course, the plaintiff has the responsibility clearly to allege facts demonstrating that she is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers. Warth v. Seldin, 422 U.S. 490, 518 (1975). This assures the existence of that measure of concrete adverseness necessary to sharpen the presentation of issues necessary for the proper resolution of the constitutional questions. City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).

This particular case is interesting because it is not the normal course of events for the parties originally initiating the action to challenge their own standing on appeal by claiming the very law they challenge is not enforceable against them.[6] In the normal course of events, a simple dismissal would logically cure the current ailment. Here, however, it is Appellants' desire to pursue their claims in Missouri state court, where they started, and thus Appellants seek to shed themselves of this federal forum and all of its ramifications.[7] It is customary that "the court must accept all factual

---

[6]That Appellants' claim is not yet ripe might be another way of viewing Appellants' argument but Appellants' claim is not that this ordinance has not yet been enforced against them or that the threat of enforcement is not imminent, but rather that this statute could never apply to them, thus concentrating this matter in "standing" jurisprudence. See Johnson v. Missouri, 142 F.3d 1087, 1090 n.4 (8th Cir. 1998) (noting that although "standing and ripeness are technically different doctrines, they are closely related in that each focuses on 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'") (quoting Warth, 422 U.S. at 499 n.10).

[7]Counsel clearly pointed out at oral argument that the "problem" in this case is that there is now a judgment in place in the federal court that will affect what Appellants can do in the state court. Yet, Appellants do not overtly challenge the merits of this problematic district court opinion.

allegations in the complaint as true and draw all inferences in the plaintiff's favor" when making a determination on standing. Young America, 424 F.3d at 843. Given the unique posture of this case, the nature of Appellants' allegations on appeal are different from those alleged in their complaint. Were we to look only to Appellants' complaint (a pleading that was never amended to reflect the current discussion) there would be no controversy regarding Appellants' standing because it would surely exist. As the case stands today, we review Appellants' complaint, along with ordinance 1722, all pleadings in this matter, and the parties' arguments on appeal in making our jurisdictional decision. Warth, 422 U.S. at 517-18.

To satisfy Article III's standing requirement, (1) there must be "injury in fact" or the threat of "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to defendant's challenged action; and (3) it must be likely (as opposed to merely speculative) that a favorable judicial decision will prevent or redress the injury. Summers, 129 S. Ct. at 1149; Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). The standing "requirement assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'" Summers, 129 S. Ct. at 1149 (quoting Schlesigner v. Reservists Comm. to Stop the War, 418 U.S. 208, 221 (1974)). To determine whether a pre-enforcement challenge such as this is justiciable requires us to take these factors into consideration on a case-by-case basis. Regional Rail Reorganization Act Cases, 419 U.S. 102, 143 n.29 (1974).

Appellants now claim that ordinance 1722 is not enforceable against them because (1) Appellants only hire independent contractors, (2) Appellants have no business permit to lose in the event of non-compliance, and (3) any potential injuries, assuming ordinance 1722 applied to Appellants, are not imminent and are speculative.

Focusing properly and sequentially on the three requisites for standing, we find "injury in fact" traceable to ordinance 1722 that could be redressed by a favorable judicial decision. All parties acknowledge that Appellants have not yet been subjected to enforcement under ordinance 1722. Pre-enforcement facial challenges may be brought, however, in certain circumstances. Plaintiffs have standing to challenge the facial validity of a regulation notwithstanding the pre-enforcement nature of a lawsuit, where the impact of the regulation is direct and immediate and they allege an actual, well-founded fear that the law will be enforced against them. Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 507 (1972); Abbott Labs. v. Gardner, 387 U.S. 136, 152 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977); Krantz v. City of Fort Smith, 160 F.3d 1214, 1218 (8th Cir. 1998). Only recently have Appellants changed their tune to claim they no longer fear enforcement of ordinance 1722. Even so, the City argues that ordinance 1722 *is* enforceable against Appellants and will be enforced against Appellants and, given the unique posture of this case, we take that claim into consideration when deciding Appellants' stake in this litigation. See Int'l Ass'n of Firefighters v. City of Ferguson, 283 F.3d 969, 973 (8th Cir. 2002) (concluding that the threatened conduct against the claimant's husband should she violate the challenged charter provision was sufficient to present a "case" or "controversy"); Krantz, 160 F.3d at 1217 (assuming for the purposes of standing that the City would enforce violations of the law in question because the City vigorously defended the ordinance and never suggested that it would refrain from enforcement).

Now, turning to Appellants' specific claims as to why 1722 is not enforceable, we easily dispose of the first. Appellants *do* hire individuals or contractors from time to time to perform maintenance on the rental units and are likely to do so in the future.[8] As such, we need neither speculate nor merely attempt to anticipate whether

---

[8]Appellants claim that ordinance 1722 is not enforceable against them because it does not govern business entities who hire only independent contractors. Very plainly, and under oath, Jacqueline Gray stated that she "intend[ed] in the near future to hire an individual *or* contractor to paint the interior of one unit and another to

Appellants will fall within the purview of ordinance 1722 in that respect. O'Shea v. Littleton, 414 U.S. 488, 497 (1974).

Second, Appellants are clearly contemplated by the ordinance at issue as a "business entity." That Appellants do not maintain a business license is immaterial. The definition casts a wide net. "'Business entity' means any person or group of persons performing or engaging in any activity, enterprise, profession, or occupation for gain, benefit, advantage, or livelihood, whether for profit or not for profit." Ordinance No. 1736 § 3A. "The term business entity shall include, but not be limited to, self-employed individuals, partnerships, corporations, contractors, and subcontractors." Id. at § 3A(1). Section 3A(2) further states that "[t]he term business entity shall include any business entity that possesses a business license, any business entity that is exempt by law from obtaining such a business license, and any business entity that is operating unlawfully without such a business license." That Appellants do not have a business license does not exempt them from this ordinance. Appellants fall within the ordinance provisions and must, as law-abiding citizens, comply and conform their conduct according to its directives.

Third, this injury is not speculative in such a way as to defeat jurisdiction. Where a plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute, courts have found standing to challenge the statute, even absent a specific threat of enforcement. Russell v. Burris, 146 F.3d 563, 566-67 (8th Cir. 1998); see also Lake Carriers', 406 U.S. at 507(determining that the mere obligation

---

replace carpeting." We take her at her word. Further, we are confused by Appellants' claim that they "have no history of hiring Hispanic workers and have evidenced no intent to do so in the future." Perhaps it is Appellants who are confused–ordinance 1722 addresses employment of illegal aliens, not Hispanics. (We further ponder why Appellants have adopted such a hiring policy, but we digress.) If Appellants meant to argue that they have not hired, and have no intent in the future to hire, illegal aliens, then we are left wondering, again, why this case was initiated in state court in the beginning, or at the very least, not dismissed in federal court long ago.

to install sewage storage devices placed upon the challenging party under a Michigan statute, even without threat of enforcement, created a live controversy for purposes of justiciability). "This court has also entertained constitutional challenges where the statute clearly applies to the plaintiff, and the plaintiff has stated a desire not to comply with its mandate." United Food & Commercial Workers Int'l Union, AFL-CIO, CLC v. IBP, Inc., 857 F.2d 422, 428 (8th Cir. 1988); see also Pursley v. City of Fayetteville, 820 F.2d 951, 953 (8th Cir. 1987); Blatnik Co. v. Ketola, 587 F.2d 379, 381 (8th Cir. 1978). And, as this court has previously noted, commentators agree with this result: "'[w]here the enforcement of a regulatory statute would cause plaintiff to sustain a direct injury, the action may properly be maintained, whether or not the public officer has "threatened" suit; the presence of the statute is threat enough,' at least where the challenged statute is not moribund." United Food, 857 F.2d at 428 (quoting 6A Moore's Federal Practice, ¶ 57.18[2] at 57-189 (2d ed. 1987)) (alteration in original). Here, even though Appellants do not have a business license, they admittedly will continue to maintain the rental property by hiring an "individual or contractor" to do work. It is the hiring process that is affected. And, as noted above, this affected process is fairly traceable to ordinance 1722.

The City claims that injury-in-fact indeed exists. Despite Appellants' lack of a business license and the professed denial of ever obtaining a business license in the future, the City claims that no less than four other sanctions apply to business entities that violate ordinance 1722, all directly traceable to ordinance 1722 itself: (1) a violator of ordinance 1722 is compelled to take specific steps to correct the violation and submit a sworn affidavit; (2) if in violation, Appellants can be required to enroll in the E-Verify program; (3) a violation of ordinance 1722 exposes the violator to potential penalties under federal law; and (4) Appellants would be barred from expanding their business and opening an off-site leasing office. The City additionally points out that Appellants will suffer economic injury, including the cost of compliance (i.e., the cost of additional steps in hiring, etc.), and argues that merely being subjected to the enforcement process is enough to confer standing. Only the

first of the City's enumerated "sanctions" has teeth, along with the City's more general discussion of Appellants' injuries, as the second and third alleged sanctions apply after the suspension of a license has occurred, which Appellants admittedly do not have, and the fourth is too tenuous to entertain.

As a business entity contemplated by ordinance 1722, Appellants are still compelled to take specific steps to correct a violation, despite the absence of a threat of license suspension. At the very least, as a business entity covered by the ordinance, Appellants may not knowingly recruit, hire for employment, or continue to employ, an unlawful worker to perform work within the City. Ordinance No. 1736 § 4A. And, when a valid complaint is lodged, Appellants would be required to terminate a violative employee and provide identity information to the Valley Park Code Enforcement Office. Id. at §§ 4B, 5B. Further, Appellants could be asked to procure further information from the federal government regarding the immigration status of the involved employee. Id. at § 5B. Generally, Appellants must inevitably alter current hiring practices to establish a procedure that assures compliance with ordinance 1722.[9] This might entail a request for proof of status or conducting a wholly independent verification of potential employees prior to hiring. This, on its own, is injury-in-fact, traceable to ordinance 1722, that a favorable decision could redress, sufficient to confer jurisdiction.[10]

---

[9]This appears to have been one of the bases on which Appellants challenged the ordinance to begin with. The Amended Petition for Declaratory and Injunctive Relief states: "Windhover is a 'business entity' as that term is defined in Valley Park Ordinance 1722. Ordinance 1722 would require the Plaintiffs to investigate and determine the immigration status of any person it hires or contracts to perform work on its properties, and . . . Plaintiffs do not know how to determine a person's immigration status." This same concern was expanded upon in Appellants' Second Amended Complaint for Declaratory and Injunctive Relief.

[10]If, as they claim, Appellants choose to stand in defiance of ordinance 1722, they could, as the City noted at oral argument, be subject to Valley Park City Code § 100.110, entitled "General Penalty," which states that "[f]or all violations of this Code

The latter discussion regarding the effect this ordinance certainly has on Appellants' very way of recruiting and hiring also embraces the "prudential" concerns that are juxtaposed with, and considered in addition to, the constitutional elements already discussed. Valley Forge, 454 U.S. at 471. This action clearly falls "within the zone of interests protected by the law invoked." Allen v. Wright, 468 U.S. 737, 751 (1984). The ordinance is directly targeted at business entities such as Appellants who recruit and hire employees. And, Appellants are seeking redress of their own legal rights and not the legal rights or interests of third parties. Warth, 422 U.S. at 499. Appellants have an interest of their own to defend as set out above. And, finally, this action presents more than "abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." Valley Forge, 454 U.S. at 475 (internal quotations omitted). Again, there is no doubt that Appellants fall within the purview of ordinance 1722 and are immediately affected by its directives, as are all business entities in the City.

Accordingly, Appellants have standing and this matter is appropriately before us for review.

---

and all other ordinance violations, the penalty of which has not been established elsewhere in this Code or by separate ordinance, the Municipal Judge may impose the same penalty as is set by State Statute for the same offense or the following maximum penalty, whichever is less: A fine of five hundred dollars ($500.00) and costs or ninety (90) days' imprisonment, or both the fine and imprisonment." Post-argument, Appellants argued that the City fundamentally changed its position on an issue not on appeal (preemption), revealing for the first time that ordinance 1722 is enforceable by the imposition of fines or imprisonment. Enforcement of 100.110, however, remedies the act of defiance, *not* a violation of ordinance 1722, contrary to Appellants' argument. Accordingly, we do not indulge Appellants' supplemental, and novel, arguments regarding its application, as it is not central to the issue before us.

## C.  Preclusion

Appellants alternatively argue that the district court should have given full faith and credit to the state court's judgment and held that the penalty provision that appears in ordinance 1722, which they claim is identical to the penalty provisions of ordinances 1708 and 1715, is invalid under state law. We have considered Appellants' remaining arguments and find them to be without merit.[11]

## III.  CONCLUSION

For the reasons stated herein, we affirm.

_____

---

[11] As part of this consideration, we reviewed Appellants' supplemental appendix and hereby grant Appellants' pending motion to file that document.

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

## MEMORANDUM

**TO:**    All Counsel of Record

**FROM:**   DeAnn M. Sharpless, Deputy Clerk

**DATE:**   June 11, 2009

Re:     08-1681  Jacqueline Gray, et al v. City of Valley Park, MO

*************************************************************************

On June 5, 2009, the Court issued an opinion in the referenced appeal.   Please replace your opinion with the attached corrected opinion.  The original opinion was corrected on page 11, footnote 8.  The first word should be "Appellants" rather than "Appellants'."

cc:    All Circuit Judges
       St. Paul Clerk's Office
       West Publishing
       Missouri Lawyers Weekly

   District Court/Agency Case Number(s):   4:07-cv-00881-ERW